**UNITED STATES of America, Appellee,**

v.

**Laura Elena ESQUER–RIVERA, Appellant.**

**UNITED STATES of America, Appellee,**

v.

**Anacleto NAVA–BIBAYOFF, Appellant.**

**Nos. 74–1099, 74–1110.**

United States Court of Appeals, Ninth Circuit.

July 1, 1974.

Michael J. McCabe, (argued) of Federal Defenders, San Diego, Cal., for appellants.

James W. Meyers (argued), Asst. U. S. Atty., San Diego, Cal., for appellee.

OPINION

Before ELY and GOODWIN, Circuit Judges, and EAST,* District Judge.

* The Honorable William G. East, Senior United States District Judge for the District of Oregon.

PER CURIAM:

Laura Elena Esquer-Rivera and Anacleto Nava-Bibayoff appeal their convictions for conspiring to possess and possessing with intent to distribute 101 pounds of marijuana. The evidence of these violations was discovered during a search of their vehicle at a temporary immigration checkpoint. The appellants contend that this search violated the Fourth Amendment and that the evidence should have been suppressed. We agree, and reverse their convictions.

On the evening of August 26, 1973, a car containing Esquer-Rivera and Nava-Bibayoff was stopped at the Border Patrol's temporary immigration checkpoint on Interstate 8, west of Ocotillo, California. After detecting the odor of marijuana emanating from the vehicle, a border-patrol agent searched the car and found marijuana concealed under clothing on the rear floorboard. A later search revealed more marijuana hidden in a specially built compartment under the back seat and over the rear axle of the vehicle.

■ In United States v. Bowen, 500 F.2d 960 (9th Cir., 1974) (en banc), this court held that under the rule announced by the Supreme Court in Almeida-Sanchez v. United States, 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), searches by border-patrol agents at fixed checkpoints which were not the functional equivalents of border searches violated the Fourth Amendment.[1] Subsequently, in United States v. Brignoni-Ponce, 499 F.2d 1109 (9th Cir., 1974) (en banc), we held that Almeida-Sanchez also applied to immigration stops for the purpose of interrogating persons about their citizenship. Such stops cannot be made without at the very least a reasonable belief, founded upon "articulable" facts, that one or more of the people to be interrogated are aliens illegally in the country.

■ Here, the government concedes that the agents lacked such a belief. Hence, the initial stop does not meet Fourth Amendment standards unless the Ocotillo checkpoint is a functional equivalent of the border. The government argues that we should remand the case for a post-Bowen determination of functional equivalency.[2] Although in some cases such a remand would be proper, here the record plainly reveals that the Ocotillo checkpoint is approximately six miles north of the Mexican border on Interstate 8, a major east-west freeway entirely within the United States that connects the Southwest with the West Coast. As we said in Bowen, "border-patrol agents had no reason to believe that virtually all or even most of the cars passing through their checkpoint had recently, or ever, crossed the border." 500 F.2d at 966. We hold then that the Ocotillo checkpoint was not shown to be located at a functional equivalent of the border, as that phrase was used in Almeida-Sanchez and Bowen. See also United States v. Morgan, 501 F.2d 1351 (9th Cir., 1974) (en banc).

Reversed and remanded.

---

1. Since the stop and search in this case took place after June 21, 1973, the date on which the Supreme Court decided Almeida-Sanchez, we need not concern ourselves with that part of the Bowen opinion which held that Almeida-Sanchez was not retroactive to fixed checkpoint searches conducted prior to June 21.

2. On November 19, 1973, this case was consolidated with other similar cases for hearings on the impact of Almeida-Sanchez. On December 5, 1973, in United States v. Baca, 368 F.Supp. 398 (S.D.Cal.1973), the District Court for the Southern District of California held that the Ocotillo checkpoint, as well as all other immigration checkpoints operated within the Southern District, were at functional equivalents of the border. The Baca opinion, however, was written without the benefit of our later decision in Bowen.